United States District Court
Southern District of Texas
**ENTERED**
March 25, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-4360 |
| | § | (CRIMINAL NUMBER H-18-176) |
| BABAJIDE TOLULOPE BABATUNDE | § | |

## MEMORANDUM OPINION AND ORDER

The defendant, Babajide Tolulope Babatunde ("Babatunde" or "Defendant") (BOP #39323-479), has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("§ 2255 Motion") (Docket Entry No. 73) to challenge his conviction for false use of a passport.[1] Babatunde has also filed a Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Memorandum in Support") (Docket Entry No. 74). The government has filed United States' Answer to Babajide Tolulope Babatunde's Motion Under 28 U.S.C. § 2255, Motion to Dismiss, Motion for Summary Judgment, and Brief in Support ("United States' Motion") (Docket Entry No. 108), arguing that Babatunde is not entitled to relief. Babatunde has filed a Response to United States' Answer to

---

[1]Although a Civil Action Number has been assigned to the § 2255 Motion, all docket entries referenced are to Criminal No. H-18-176. For purposes of identification all page citations refer to the page number imprinted by the court's electronic case filing (ECF) system.

Babajide Tolulope Babatunde's Motion Under 28 U.S.C. § 2255, Cross-Motion for Summary Judgment ("Babatunde's Response") (Docket Entry No. 111).

Babatunde has filed several other motions in an effort to procure his release, including a Motion to Dismiss Indictments in the Interest of Justice ("Motion to Dismiss Indictments") (Docket Entry No. 109); Motion for Reconsideration of Release from Custody and Incorporated Statements of Law and Facts Pending the Final Determination on the Merits of His Section '2255' Petition ("Motion for Reconsideration") (Docket Entry No. 112); Application for Modification of Detention Order — Release on Recognizance ("Application for Modification/Release") (Docket Entry No. 113), and a Request for Expedited Consideration (Docket Entry No. 114). The government has filed United States' Response in Opposition to Babatunde's Recent Motions and Authorities in Support (Docket Entry No. 115). Babatunde has filed a Response to Government's Response in Opposition to Request for Expedited Consideration (Docket Entry No. 117). Babatunde has also filed a Motion to Compel Return of Property Pursuant to Fed. R. Crim. P. 41(g) ("Motion to Compel") (Docket Entry No. 120), a Motion for Judgment in Favor of Babajide Tolulope Babatunde ("Motion for Judgment") (Docket Entry No. 121), and a Motion for Discharge and Immediate Release from Custody to Correct Manifest Injustice (Docket Entry No. 122). The government has filed Government's Response to Defendant's Motion for Return of Property (Docket Entry No. 125).

The court has carefully reviewed all of the parties'
arguments. Based on this review, the court's recollection of the
relevant proceedings, and the application of governing legal
authorities, all of Babatunde's motions will be denied for the
reasons explained below.

## I. Background

A grand jury returned an Indictment against Babatunde,
charging him with five counts of false use of a passport in
violation of 18 U.S.C. §§ 1543 and 2.[2] Specifically, Babatunde was
charged with using passports that he knew were forged or
counterfeit to open accounts at several banks in the Houston area
on five separate occasions.[3] On October 30, 2018, Babatunde
entered a guilty plea to count one of the Indictment pursuant to a
written Plea Agreement.[4] In doing so, Babatunde, who is a citizen
of Nigeria, admitted that he used a counterfeit passport from the
Republic of Ireland, which featured his photograph and a fictitious
name, to open a bank account at Capital One Bank in Houston, Texas,
on November 3, 2015.[5]

Before accepting Babatunde's plea the court confirmed that he
had conferred with his defense counsel on numerous occasions and

---

[2]Indictment, Docket Entry No. 1, pp. 1-3.

[3]Id.

[4]Plea Agreement, Docket Entry No. 31, pp. 1-12.

[5]Id. at 7.

-3-

that he was "fully satisfied" with his attorney's performance.[6]
The court reviewed the charges against him and the maximum sentence
that Babatunde faced.[7]  The court confirmed that Babatunde under-
stood the consequences of his guilty plea, including the likelihood
that he would be deported after serving his sentence, and the
rights he was waiving.[8]  The court also confirmed that Babatunde
understood the terms of the Plea Agreement, that no promises had
been made as to his potential sentence, and that Babatunde had not
been threatened or coerced to plead guilty.[9]  Babatunde admitted
that he willfully used a counterfeit passport with the intent to
make people believe that it was legitimate.[10]  After concluding that
Babatunde's guilty plea was knowingly and voluntarily entered, the
court accepted his plea and found him guilty as charged in count
one of the Indictment.[11]

The Probation Office prepared a Presentence Investigation
Report ("PSR") for use in determining Babatunde's punishment under
the United States Sentencing Guidelines Manual.[12]  According to the

---

[6]Transcript of Rearraignment Before the Honorable Sim Lake on
October 30, 2018 ("Rearraignment Transcript"), Docket Entry No. 71,
pp. 8-9, 17-18.

[7]Id. at 11-12, 20-21.

[8]Id. at 17-19.

[9]Id. at 19.

[10]Id. at 20-22.

[11]Id. at 22.

[12]PSR, Docket Entry No. 40, pp. 1-18.

-4-

PSR, law enforcement agents determined that Babatunde used counterfeit passports to open at least 14 bank accounts in Houston for the purpose of receiving proceeds of fraud, including "romance fraud, check fraud, [and] internet sales fraud," resulting in a total loss to victims of an amount that exceeded $1 million in fraudulent deposits to those bank accounts.[13]  With adjustments for specific offense characteristics related to amount of loss involved in the fraudulent scheme, the Probation Office determined that Babatunde's offense level score was 22, but recommended a three-level downward adjustment for his acceptance of responsibility, which reduced Babatunde's total offense level score to 19.[14]  With zero criminal history points, Babatunde faced a potential range of 30 to 37 months' imprisonment under the Sentencing Guidelines.[15]  Although the government argued for a longer sentence, the court sentenced Babatunde at the lowest end of the recommended range to 30 months' imprisonment, followed by a 3-year term of supervised release.[16]  Babatunde filed an appeal, which was dismissed at his request.[17]

---

[13]Id. at 4-6; Third Addendum to the PSR, Docket Entry No. 51 (adjusting the loss amount to $1,098,275.24).

[14]PSR, Docket Entry No. 40, pp. 7-8.

[15]Id. at 9, 14.

[16]Sentencing Before the Honorable Sim Lake on July 25, 2019 ("Sentencing Transcript"), Docket Entry No. 67, p. 8.

[17]Order, Docket Entry No. 93, pp. 1-2 (dismissing United States v. Babatunde, No. 19-20551 (5th Cir. Jan. 7, 2020)).

Babatunde now seeks relief under 28 U.S.C. § 2255, arguing that he was denied effective assistance from his trial counsel.[18] Babatunde contends that his counsel "independently waived [his] right to a jury trial" and coerced Babatunde to plead guilty by promising a sentence of 0 to 12 months.[19]   Babatunde also contends that his guilty plea is invalid because counsel failed to provide him with a copy of the Plea Agreement and inform him of the impact of the Sentencing Guidelines or the consequences of his plea with respect to deportation.[20]   Babatunde also contends that his counsel was deficient in defending him before his guilty plea was entered because he failed to:

    (a)   File an "omnibus" pretrial motion.

    (b)   File a motion requesting grand jury testimony.

    (c)   File a motion to suppress evidence.

    (d)   File a motion to quash the Indictment or a motion to dismiss some or all of the counts.

    (e)   File a motion for a speedy trial.

    (f)   File a motion for severance.

    (g)   Furnish him with discovery of favorable evidence.

---

[18]§ 2255 Motion, Docket Entry No. 73, pp. 4-9; Memorandum in Support, Docket Entry No. 74, pp. 1-23.

[19]§ 2255 Motion, Docket Entry No. 73, p. 8; Memorandum in Support, Docket Entry No. 74, pp. 10, 11-12, 14-15, 16.

[20]Memorandum in Support, Docket Entry No. 74, pp. 13-14, 15, 16.

(h)   Investigate and locate witnesses.

(i)   Prepare for trial.[21]

Babatunde contends that counsel was deficient after the plea was entered because he failed to prepare for or defend him during sentencing by (a) requesting a "Fatico hearing"; (b) investigating or presenting mitigating evidence; (c) objecting to enhancements in the PSR; (d) arguing for a reduction based on provisions in the Sentencing Guidelines; and (e) obtain a judicial recommendation against deportation from the court.[22]   Finally, Babatunde contends that his trial counsel was deficient for abandoning him after he filed a notice of appeal.[23]   The government argues that Babatunde is not entitled to relief and that the § 2255 Motion must be denied because his claims lack merit.[24]

## II.   Standard of Review

A prisoner serving a sentence imposed by a federal court "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.

---

[21]§ 2255 Motion, Docket Entry No. 73, pp. 4-9; Memorandum in Support, Docket Entry No. 74, pp. 3-11.

[22]Memorandum in Support, Docket Entry No. 74, pp. 17-21.

[23]Id. at 22-23.

[24]United States' Motion, Docket Entry No. 108, pp. 21-42.

§ 2255(a). If the court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A prisoner seeking relief under 28 U.S.C. § 2255 "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. United States v. Frady, 102 S. Ct. 1584, 1593 (1982). After a defendant has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that [he] stands fairly and finally convicted." United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001) (citations omitted). For this reason, review of convictions under § 2255 is limited to "questions of constitutional or jurisdictional magnitude," United States v. Scruggs, 691 F.3d 661, 666 (5th Cir. 2012), or claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. See, e.g., Massaro v. United States, 123 S. Ct. 1690, 1694-96 (2003).

Mindful of the Defendant's pro se status, the court has liberally construed his § 2255 Motion and related filings. See Estelle v. Gamble, 97 S. Ct. 285, 292 (1976) ("[A] pro se document is to be liberally construed."); Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam) (stating that pro se pleadings are held "to less stringent standards than formal pleadings drafted by

lawyers").   Nevertheless,  a  <u>pro se</u>  prisoner's  "mere conclusory allegations  on  a  critical  issue  are  insufficient  to  raise  a constitutional  issue."   <u>United States v. Woods,</u>  870 F.2d 285, 288 n.3  (5th  Cir.  1989)  (citing  <u>Ross v. Estelle,</u>  694 F.2d 1008, 1012 (5th Cir. 1983)).

## III.  <u>Discussion</u>

### A.  Babatunde's Guilty Plea

Several of Babatunde's claims take issue with his guilty plea. It  is  well  established  that  a  guilty  plea  will  be  upheld  on collateral  review  if  the  plea  was  "entered  into  knowingly, voluntarily, and intelligently."  <u>Montoya v. Johnson,</u> 226 F.3d 399, 405  (5th  Cir.  2000)  (citing  <u>James v. Cain,</u>  56 F.3d 662, 666 (5th Cir. 1995)).   A guilty plea is knowing and voluntary if done with sufficient  awareness  of  the  relevant  circumstances  and  likely consequences surrounding the plea.   <u>See Bradshaw v. Stumpf,</u> 125 S. Ct. 2398, 2405 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and  intelligently,  'with  sufficient  awareness  of  the  relevant circumstances  and  likely  consequences.'")  (quoting  <u>Brady v. United States,</u> 90 S. Ct. 1463, 1469 (1970)).   "[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." <u>Bousley v. United States,</u> 118 S. Ct. 1604, 1610 (1998) (quoting <u>Mabry v. Johnson,</u> 104 S. Ct. 2543, 2546-47 (1984)).

A knowing and voluntary guilty plea waives all non-jurisdictional defects that occurred before the plea. See Tollett v. Henderson, 93 S. Ct. 1602, 1608 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). This waiver includes "all claims of ineffective assistance of counsel, . . . except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) (citations omitted). The only ineffective-assistance claim that fits within this waiver is one taking exception to counsel's advice concerning the plea. See Tollett, 93 S. Ct. at 1608.

Although Babatunde claims that his guilty plea was tainted by his counsel's deficient performance and not voluntarily or knowingly made, the record refutes his allegations. The transcript of the rearraignment proceeding features the following exchange, which confirms that Babatunde consulted with his counsel numerous times and that he understood the charges against him as well as the potential consequences that he faced at sentencing before he entered his guilty plea:

> THE COURT: How many times have you talked to your lawyer about this case?
>
> [BABATUNDE]: We talk almost every week perhaps.

THE COURT:       At least five times?

[BABATUNDE]:     Yes, sir.

THE COURT:       Has your lawyer discussed with you the
                 charges  against  you  and  what  the
                 government  would  have  to  prove  to
                 establish your guilt?

[BABATUNDE]:     Yes, Your Honor.

                          .  .  .

THE COURT:       Has he discussed with you how the federal
                 advisory  sentencing  guidelines  might
                 apply in your case?

[BABATUNDE]:     Yes, Your Honor.

THE COURT:       Has your attorney explained to you that
                 you may well be deported after you serve
                 your sentence?

[BABATUNDE]:     Yes, Your Honor.

THE COURT:       Has your attorney answered all of your
                 questions?

[BABATUNDE]:     Yes, Your Honor.  One hundred percent.

THE COURT:       Has  he  done  everything  that  you  have
                 asked him to do?

[BABATUNDE]:     Yes, Your Honor.

THE COURT:       Are you fully satisfied with the advice
                 and  counsel  that  your  attorney  has
                 provided you?

[BABATUNDE]:     Yes, Your Honor.[25]

The court advised Babatunde that he did not have to plead guilty
and that he was giving up the right to a trial by doing so.[26]

_____

[25]Rearraignment Transcript, Docket Entry No. 71, pp. 8-9.

[26]Id. at 10-11.

-11-

Babatunde acknowledged that he understood.[27]   After informing
Babatunde of the maximum sentence that he could receive based on
the charges against him, the court explained to Babatunde that his
sentence had not yet been determined and that until the Probation
Office completed its investigation, "no one knows what advisory
guideline range the probation officer will recommend or what
advisory guideline range the Court will find applicable or what
sentence the Court will impose."[28]   Babatunde confirmed that he
understood.[29]

The record reflects that Babatunde was provided with a copy of
the written Plea Agreement and that he discussed it with his
counsel:

| | |
|---|---|
| THE COURT: | . . . Mr. Babatunde, the government has also provided me with a copy of a written plea agreement.   Have you read the agreement? |
| [BABATUNDE]: | Yes, sir. |
| THE COURT: | When did you read it? |
| [BABATUNDE]: | I read it multiple times last week and yesterday. |
| THE COURT: | Have you talked to your lawyer about it? |
| [BABATUNDE]: | Yes, Your Honor. |
| THE COURT: | Did he answer any questions you had about it? |

---

[27] Id. at 11.

[28] Id. at 11-12.

[29] Id. at 12.

       [BABATUNDE]:    He answered every question about it.

       THE COURT:     Do you have a copy there in front of you?

       [BABATUNDE]:    Yes, Your Honor.[30]

After confirming that Babatunde had a copy of the Plea Agreement and that he had discussed it with counsel to his satisfaction, the court described the plea and its consequences, including the effect Babatunde's guilty plea would have on his immigration status:

       THE COURT:     . . . Paragraph 5 says: Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a United States citizen. Defendant understands that if he is not a citizen of the United States, by pleading guilty, he may be removed from the United States, denied citizenship and denied admission to the United States in the future.

                    Have you discussed that provision with your attorney?

       [BABATUNDE]:    Yes, Your Honor.[31]

After confirming that Babatunde understood the Plea Agreement and its consequences, the court posed a series of additional questions about whether Babatunde's decision to plead guilty was voluntary, thereby waiving his right to a jury trial:

       THE COURT:     Other than what is stated in this written [plea] agreement, has the government made any promises to you in connection with your guilty plea?

       [BABATUNDE]:    No, Your Honor.

---

[30]*Id.* at 17-18.

[31]*Id.* at 18-19.

. . .

| | |
|---|---|
| THE COURT: | Has the government told you what sentence you will receive if you plead guilty? |
| [BABATUNDE]: | No, Your Honor. |
| THE COURT: | Has your lawyer told you what sentence you will receive if you plead guilty? |
| [BABATUNDE]: | No, Your Honor. |
| THE COURT: | Has anyone else told you what sentence you will receive if you plead guilty? |
| [BABATUNDE]: | No, Your Honor.[32] |

After the court described the essential elements of the offense, Babatunde admitted that the following factual basis for the guilty plea found in paragraph 14 of the Plea Agreement was true.[33]  That paragraph states as follows:

> On or about November 3, 2015, the Defendant used a counterfeit passport from the Republic of Ireland, number #PB8039169, in the name Jobi Johnson, to open a bank account at Capital One Bank in Houston, Texas.  The passport contained a photograph of the Defendant but used a fictitious name.  Special Agent Katherine Langston of the United States Department of State, Diplomatic Security Service, examined the passport and determined that it was counterfeit.  The case agent was able to obtain and review the passport documents and photographs associated with the bank account and obtain pictures of the suspect using the counterfeit passport.  These were compared to photographs of the defendant found in his A file and demonstrate that it is the defendant that committed this offense.[34]

---

[32]Id. at 19-20.

[33]Id. at 21.

[34]Plea Agreement, Docket Entry No. 31, p. 7.

-14-

Babatunde admitted that he did everything described in the factual basis and that he willfully used a counterfeit Irish passport with intent to make others believe that it was legitimate.[35]  Babatunde then entered his guilty plea and signed the Plea Agreement in open court.[36]  The court accepted the plea after finding that Babatunde was "fully competent and capable of entering an informed plea, that the defendant's plea of guilty [was] a knowing and voluntary plea supported by an independent basis in fact establishing each of the essential elements of the offense."[37]

Representations made by the Defendant, his lawyer, and the prosecutor, as well as the findings made by the trial judge accepting the plea, constitute a formidable barrier to any subsequent collateral attack.  See Blackledge v. Allison, 97 S. Ct. 1621, 1629 (1977).  A defendant's "[s]olemn declarations in open court carry a strong presumption of verity."  Id.; see also United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002) ("Reviewing courts give great weight to the defendant's statements at the plea colloquy.").  As a result, a defendant's representations during a plea colloquy impose a "heavy burden" of proof upon the defendant to show that his plea was not voluntarily and knowingly made.  See United States v. Diaz, 733 F.2d 371, 373-74

---

[35]Rearraignment Transcript, Docket Entry No. 71, pp. 21-22.

[36]Id. at 22.

[37]Id.

(5th Cir. 1984); see also DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994) ("Although their attestations to voluntariness are not an absolute bar to raising this claim, [defendants] face a heavy burden in proving that they are entitled to relief because such testimony in open court carries a strong presumption of verity.").

Babatunde's allegations that defense counsel "independently waived [his] right to [a] jury trial" without his consent and coerced Babatunde to plead guilty by promising a sentence of no more than 12 months are refuted by his sworn declarations during the plea colloquy.[38]  Babatunde's representations also refute his contention that counsel failed to provide him with a copy of the Plea Agreement or inform him of the consequences of his plea with respect to the impact of the Sentencing Guidelines and his immigration status.[39]  Babatunde has not offered any independent evidence to overcome the strong presumption of verity that applies to the sworn declarations that he made in open court during the plea colloquy. See Blackledge, 97 S. Ct. at 1629; United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998) (overcoming the presumption of verity that applies to a defendant's sworn declarations requires a defendant to produce "independent indicia of the likely merit of [his] allegations," such as "one or more

---

[38]§ 2255 Motion, Docket Entry No. 73, p. 8; Memorandum in Support, Docket Entry No. 74, pp. 10, 11-12, 14-15, 16.

[39]Memorandum in Support, Docket Entry No. 74, pp. 13-14, 15, 16.

affidavits from reliable third parties"). Babatunde's bare allegations, which contradict his sworn representations during the plea colloquy, are insufficient to establish that his guilty plea was tainted by his counsel's deficient performance or to require an evidentiary hearing. See Cervantes, 132 F.3d at 1100; see also United States v. McDaniels, 907 F.3d 366, 370-72 (5th Cir. 2018).

To the extent that Babatunde contends that his plea was rendered involuntary because of deficient advice from his defense attorney, Babatunde fails to establish that he was denied effective assistance of counsel in connection with his plea for reasons discussed below. As a result, Babatunde's knowing and voluntary guilty plea is adequate to waive all nonjurisdictional defects that may have occurred before his plea was entered. See United States v. Medel-Guadalupe, 987 F.2d 424, 428 (5th Cir. 2021) ("It is well-settled that when a defendant enters a voluntary and unconditional guilty plea, the plea has the effect of waiving all nonjurisdictional defects in the prior proceedings.") (quoting United States v. Daughenbaugh, 549 F.3d 1010, 1012 (5th Cir. 2008)). This includes Babatunde's claims that his defense counsel was deficient for failing to file pretrial motions, investigate, locate witnesses, and prepare for trial, which are also discussed further below.[40] See Tollett, 93 S. Ct. at 1608; see also United States v. Israel, — F. App'x —, 2020 WL 7658421, at *9 (5th

---

[40] § 2255 Motion, Docket Entry No. 73, pp. 5-9; Memorandum in Support, Docket Entry No. 74, pp. 3-11.

Cir. Dec. 23, 2020) (per curiam) (Observing that "[a] voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant. This [waiver also] includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.") (citations omitted).

## B.   Ineffective Assistance of Counsel

A defendant's claim that he was denied effective assistance of counsel is analyzed under the legal standard set forth in Strickland v. Washington, 104 S. Ct. 2052 (1984). To prevail under the Strickland standard, a defendant must demonstrate that (1) counsel's performance was deficient and (2) he was prejudiced as the result of counsel's deficient performance. Id. at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that render[ed] the result unreliable." Id.

To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. This is a "highly deferential" inquiry in which "counsel is strongly presumed to have rendered adequate assistance" and that the challenged conduct was the product of reasoned trial strategy. Id. at 2066. Under this standard courts must "presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010) (citing

-18-

Strickland, 104 S. Ct. at 2065).  To overcome this presumption a defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  Strickland, 104 S. Ct. at 2066.  "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" while recognizing "that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id.

Even assuming that a defendant can demonstrate error by his counsel, he must still demonstrate the requisite prejudice in order to prevail.  Strickland, 104 S. Ct. at 2066 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").  To establish prejudice under Strickland "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 2068.  Babatunde's ineffective-assistance claims are examined separately below as they pertain to his guilty plea, pretrial proceedings unrelated to the guilty plea, sentencing, and right to appeal.

    1.   Babatunde Was Not Denied Effective Assistance of Counsel
         in Connection With His Guilty Plea.

A criminal defendant is entitled to effective assistance of counsel in connection with the decision to enter a guilty plea.

<u>Lee v. United States,</u> 137 S. Ct. 1958, 1964 (2017).  In addition to establishing deficient performance in the guilty plea context, the prejudice-prong of the <u>Strickland</u> standard is not satisfied unless a defendant shows that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart,</u> 106 S. Ct. 366, 370 (1985).  This assessment, in turn, will depend in part on a prediction of what the outcome of the trial might have been.  <u>See</u> <u>id.</u>

In undertaking this review it is necessary to examine "the 'totality of the evidence'" as it relates to the defendant's decision-making.  <u>Lee,</u> 137 S. Ct. at 1966 (citations omitted).  The Supreme Court has observed that "[a] defendant without any viable defense will be highly likely to lose at trial" and will "rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial."  <u>Id.</u>  This factor is relevant to the prejudice inquiry for purposes of establishing an ineffective-assistance claim because "defendants obviously weigh their prospects at trial" when making the decision to enter a plea.  <u>Id.</u>  A plea of guilt should not be set aside or upset "solely because of <u>post hoc</u> assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  <u>Id.</u> at 1967.

Babatunde contends that his defense counsel was deficient in connection with his guilty plea because counsel "independently waived [his] right to a jury trial" without his consent and coerced him to plead guilty by promising a sentence of no more than 12 months in prison.[41] Babatunde contends further that his counsel failed to provide him with a copy of the Plea Agreement and that his counsel did not inform him of how the Sentencing Guidelines would apply or the consequences of his plea with respect to his immigration status.[42] For reasons discussed previously, the record of the rearraignment refutes Babatunde's claim that his right to a jury trial was waived by anyone other than Babatunde or that his plea was coerced by the promise of a particular sentence.[43]   The record also shows that Babatunde had access to the Plea Agreement and that he reviewed that document with counsel "multiple times" before executing a copy in open court.[44]   Babatunde further acknowledged on the record that counsel explained how the Sentencing Guidelines would apply and that counsel also advised Babatunde that he could be deported after he served his sentence due to his immigration status.[45]

---

[41]§ 2255 Motion, Docket Entry No. 73, p. 8; Memorandum in Support, Docket Entry No. 74, pp. 10, 11-12, 14-15, 16.

[42]Memorandum in Support, Docket Entry No. 74, pp. 13-14, 15, 16.

[43]Rearraignment Transcript, Docket Entry No. 71, pp. 11, 19-20.

[44]Id. at 17, 22.

[45]Id. at 8, 18-19.

Babatunde's unsupported allegations of ineffective-assistance are insufficient to overcome the presumption of verity accorded to the sworn statements that he made during his guilty plea proceeding.  See Blackledge, 97 S. Ct. at 1629; Cervantes, 132 F.3d at 1110.  His conclusory allegations are likewise insufficient to establish deficient performance or to raise a constitutional issue where his guilty plea is concerned.  See United States v. Demik, 489 F.3d 644, 646-47 (5th Cir. 2007) (stating that "conclusional allegations" and generalized assertions are insufficient to establish ineffective assistance or to require an evidentiary hearing on that issue); see also United States v. Holmes, 406 F.3d 337, 361 (5th Cir. 2005) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.") (quoting Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998)).  Therefore, Babatunde is not entitled to relief on any of his claims of ineffective-assistance that pertain to his guilty plea.

2.    Babatunde Has Waived All Ineffective-Assistance Claims Occurring Before His Guilty Plea.  Alternatively, These Claims are Without Merit.

Babatunde has asserted numerous ineffective-assistance claims concerning his counsel's performance preceding the guilty plea, including counsel's failure to file an "omnibus" motion or other pretrial motions for discovery of grand jury testimony, to suppress evidence, to quash or dismiss the Indictment, for a speedy trial,

-22-

and for severance of the multiple counts against him.[46]  Babatunde also faults his counsel for failing to furnish him with discovery or to investigate and locate witnesses in preparation for trial.[47] To the extent that these allegations of ineffective-assistance concern non-jurisdictional defects that are unrelated to Babatunde's decision to plead guilty, they are waived by Babatunde's voluntary and knowing guilty plea.  See Tollett, 93 S. Ct. at 1608; Israel, — F. App'x —, 2020 WL 7658421, at *9. Alternatively, these claims are without merit for reasons discussed below.

### a.  Failure to File an "Omnibus" Motion

Babatunde contends that his counsel was deficient for failing to file a pretrial "omnibus" motion after Babatunde repeatedly asked him to file one.[48]  Babatunde does not explain what he means by an omnibus motion and the cases he cites in support of this claim do not clarify the specific type of motion that he supposedly asked his counsel to file.[49]  The record confirms that defense

---

[46]§ 2255 Motion, Docket Entry No. 73, pp. 5-9; Memorandum in Support, Docket Entry No. 74, pp. 3-7.

[47]§ 2255 Motion, Docket Entry No. 73, pp. 5, 7-8; Memorandum in Support, Docket Entry No. 74, pp. 8-10.

[48]Memorandum in Support, Docket Entry No. 74, pp. 3-4.

[49]Id. (citing Ulmer v. Chancellor, 691 F.2d 209, 212 (5th Cir. 1982); Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 388 n.5 (5th Cir. 1995); and United States v. Matos, 905 F.2d 30 (2d Cir. 1990)).

-23-

counsel filed several pretrial motions on Babatunde's behalf.[50]
Babatunde's claim that counsel ignored his request to file another
type of motion is refuted by Babatunde's sworn declaration at the
rearraignment proceeding that his defense counsel had done
everything he had asked him to do.[51]   Based on this record
Babatunde's conclusory allegation that counsel failed to file
something called an omnibus motion is insufficient to establish
either deficient performance or actual prejudice.   See Demik, 489
F.3d at 646-47.   Accordingly, Babatunde is not entitled to relief
on this claim.

> b.   Failure to Request Grand Jury Testimony

Babatunde contends that his counsel was deficient for failing
to file a motion for discovery or disclosure of grand jury
testimony.[52]   Grand jury proceedings are held in secret and are
subject to disclosure only in very limited circumstances.   See Fed.
R. Crim. P. 6(e).   Absent a "particularized need," disclosure of
grand jury testimony is not available.   See Pittsburgh Plate Glass

_____

[50]See Motion for Early Disclosure of Jencks Act and Rule 26.2
Material, Docket Entry No. 12; Motion for Hearing to Determine
Intelligibility of Tapes and Accuracy of Transcripts, Docket Entry
No. 13; Motion for Rule 12(d) Designation, Docket Entry No. 14;
Defendant's Motion [in Limine] to Prevent the Prosecution Witnesses
from Introducing Impermissible Characterizations of Hearsay
Evidence and Its Source, Docket Entry No. 15; Request for
Production of Evidence Favorable to Defendant, Docket Entry No. 16.

[51]Rearraignment Transcript, Docket Entry No. 71, pp. 8-9, 10.

[52]Memorandum in Support, Docket Entry No. 74, p. 4.

-24-

Co. v. United States, 79 S. Ct. 1237, 1240-42 (1959) (affirming the trial court's refusal to order disclosure of a trial witness's grand jury testimony because the defendant failed to meet its burden of showing a "particularized need").

The record shows that defense counsel filed a motion requesting production of grand jury testimony that contradicts the direct testimony of any witness at trial.[53] Babatunde provides no facts showing that he was otherwise entitled to grand jury testimony or that counsel had, but failed to file, a valid motion. His conclusory allegation of ineffectiveness is insufficient to establish deficient performance or actual prejudice. See Demik, 489 F.3d at 646-47. As a result, Babatunde is not entitled to relief on this claim.

c.   Failure to File a Motion to Suppress

Babatunde contends that defense counsel was deficient for failing to file a motion to suppress evidence.[54] An attorney's failure to file a motion to suppress or to adequately litigate a Fourth Amendment claim may constitute deficient performance if the evidence would have been suppressed as a result of the motion. See Ward v. Dretke, 420 F.3d 479, 488 (5th Cir. 2005). The defendant bears the burden of proving that the evidence would have been

_____

[53]Request for Production of Evidence Favorable to Defendant, Docket Entry No. 16, p. 3.

[54]§ 2255 Motion, Docket Entry No. 73, pp. 4, 7; Memorandum in Support, Docket Entry No. 74, pp. 4-5.

suppressed as a result of an adequate motion or objection by his counsel.  See Kimmelman v. Morrison, 106 S. Ct. 2574, 2583 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

Babatunde appears to argue that his Republic of Ireland passport was tampered with or destroyed in an unspecified manner and that counsel should have moved to suppress due to "spoliation of the evidence."[55]  Babatunde points to a photocopy of a passport from records of a state court proceeding against him for tampering with a government document,[56] but he does not allege specific facts establishing that this evidence was exculpatory or that it was destroyed in bad faith by an agent of the United States.  See United States v. Rodriguez-Sanchez, 741 F. App'x 214, 222 (5th Cir. 2018) ("Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence."); see also United States v. Hargus, 128 F.3d 1358, 1364 (10th Cir. 1997)

---

[55]Babatunde's Response, Docket Entry No. 111, p. 6.

[56]Id. at 6, 14 (Exhibit A, "Unofficial Copy" of Passport from State Court Records Retained by Office of Chris Daniel District Clerk for Harris County, Texas).  The PSR discloses that felony counts of fraud and tampering with a record were dismissed by Harris County after Babatunde was indicted in this case.  See PSR, Docket Entry No. 40, p. 9.

(observing that a sanction for spoliation requires proof of bad faith by the government and a showing that the lost evidence had "apparent" exculpatory value).   Babatunde does not otherwise establish that the evidence was inadmissible or that spoliation forms a basis for suppression rather than a sanction, such as an adverse instruction to the jury about the weight of the evidence. See, e.g., United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000) (explaining that a district court has discretion to submit an instruction on spoliation for the jury to consider when weighing the evidence).

Babatunde mentions no other viable legal theory, and he does not meet his burden to demonstrate that defense counsel had a meritorious motion to suppress. See Kimmelman, 106 S. Ct. at 2583; United States v. Ratliff, 719 F.3d 422, 423 (5th Cir. 2013) (to prevail on an ineffective-assistance claim in this context a defendant must show that a motion to suppress would have been "meritorious"). Accordingly, Babatunde is not entitled to relief on this claim.

d.   Failure to File a Motion to Quash

Babatunde contends that counsel was deficient for failing to file a motion to quash or dismiss "all or some of the charges" in the Indictment.[57] Babatunde appears to argue that counsel should

---

[57]§ 2255 Motion, Docket Entry No. 73, p. 4; Memorandum in Support, Docket Entry No. 74, pp. 5-6.

have moved for dismissal on the grounds that the five-count indictment was "multiplicitous."[58]

"The rule against multiplicity, which derives from the Double Jeopardy Clause of the Fifth Amendment, 'prohibits the [g]overnment from charging a single offense in several counts and is intended to prevent multiple punishments for the same act.'" United States v. Cline, 986 F.3d 873, 878 (5th Cir. 2021) (quoting United States v. Kimbrough, 69 F.3d 723, 729 (5th Cir. 1995). "'An indictment is multiplicitous if it charges a single offense in multiple counts, thus raising the potential for multiple punishment for the same offense, implicating the [F]ifth [A]mendment [D]ouble [J]eopardy [C]lause.'" United States v. Reagan, 596 F.3d 251, 253 (5th Cir. 2010) (quoting United States v. Brechtel, 997 F.2d 1108, 1112 (5th Cir. 1993) (footnotes omitted)).

Babatunde was charged with five counts of using a false passport in violation of 18 U.S.C. § 1543.[59] A person commits an offense under this statute if he (1) willfully and knowingly, (2) used or attempted to use, (3) a false, forged, counterfeited, mutilated, or altered passport or an instrument purporting to be a passport, or any passport validly issued which has become void. See 18 U.S.C. § 1543. The Indictment in this case charged Babatunde of willfully and knowingly using multiple forged or counterfeit passports to open accounts on five separate occasions

---

[58]Memorandum in Support, Docket Entry No. 74, p. 6.

[59]Indictment, Docket Entry No 1, pp. 1-3.

at five different banks.[60] The record reflects that defense counsel
negotiated a Plea Agreement with the government in which Babatunde
agreed to plead guilty to one count and the other four counts of
the Indictment were dismissed.[61] Babatunde does not demonstrate
that his Indictment violates the rule against multiplicity or that,
by pleading guilty to count one of the Indictment, he has been
punished multiple times for the same offense. Absent a showing
that counsel was deficient for failing to file a motion to quash or
dismiss the Indictment, or that he was prejudiced as a result,
Babatunde is not entitled to relief on this claim.

> e. Failure to File a Motion for Speedy Trial

Babatunde contends that counsel was deficient for failing to
file a motion for a speedy trial.[62] Noting that counsel filed a
motion for a continuance, Babatunde contends that he was prejudiced
as a result because forcing a speedy trial would have "shifted the
onus on the government to prepare for trial in a short period of
time and would have probably made the government [] attempt to
resolve the matter in an amicable manner rather than going to trial
unprepared."[63]

---

[60]Id.

[61]Plea Agreement, Docket Entry No. 31, pp. 1, 5; Order, Docket
Entry No. 53, p. 1 (granting the government's motion to dismiss
counts two through five of the Indictment).

[62]Memorandum in Support, Docket Entry No. 74, pp. 7-8.

[63]Id.; Babatunde's Response, Docket Entry No. 111, pp. 8-9
(characterizing his counsel's request for a continuance as
"frivolous").

A criminal defendant has a constitutional and statutory right to a speedy trial. See 18 U.S.C. § 3161; Barker v. Wingo, 92 S. Ct. 2182, 2192-93 (1972) (setting out factors to be considered in determining whether a Constitutional speedy trial violation has occurred). When deciding a Sixth Amendment speedy trial issue, the court should consider the following: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) actual prejudice to the defendant. Barker, 92 S. Ct. at 2192-93; United States v. Scully, 951 F.3d 656, 669 (5th Cir. 2020) (reciting the four Barker factors) (citations omitted). "Actual prejudice is assessed in light of the three following interests of the defendant: (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." United States v. Duran-Gomez, 984 F.3d 366, 380 (5th Cir. 2020) (quoting United States v. Harris, 566 F.3d 422, 433 (5th Cir. 2009) (internal quotations omitted)).

The record does not disclose delay of a substantial nature for reasons that are inexcusable, and Babatunde does not demonstrate that a violation of the Speedy Trial Act or the Constitutional right to a speedy trial occurred. The Indictment was returned on March 29, 2018,[64] and trial was set for June 4, 2018.[65] The court

---

[64]Indictment, Docket Entry No. 1, pp. 1-3.

[65]Scheduling Order, Docket Entry No. 10, p. 1.

-30-

granted Defendant's Unopposed Motion for Continuance to review discovery documents that had not yet been received from the government and re-set the trial date for September 17, 2018, finding that additional time was needed to prepare for trial.[66]  On September 7, 2018, the court granted an Agreed Motion for Continuance filed by the government and extended the trial date to October 29, 2018.[67]  The trial date was cancelled on October 24, 2018,[68] and Babatunde entered a guilty plea on October 30, 2018.[69]

Babatunde, who remained on pretrial release until sentencing, does not specify at what point in the proceedings counsel should have filed a speedy trial motion.  Although Babatunde contends that he asked his counsel to file a motion for speedy trial,[70] this allegation is refuted by Babatunde's sworn declaration during the rearraignment proceeding that he was satisfied with his counsel, who had done everything Babatunde had asked him to do.[71]  Babatunde does not allege facts showing that his defense was impaired or that he was prejudiced by any delay in his proceeding.  Under these

---

[66]Order, Docket Entry No. 22 (granting Defendant's Unopposed Motion for Continuance, Docket Entry No. 21).

[67]Order, Docket Entry No. 25 (granting the government's Agreed Motion for Continuance, Docket Entry No. 24).

[68]Notice of Cancellation, Docket Entry No. 30.

[69]Rearraignment Transcript, Docket Entry No. 71, p. 22.

[70]Memorandum in Support, Docket Entry No. 74, p. 8.

[71]Rearraignment Transcript, Docket Entry No. 71, pp. 8-9, 10.

circumstances Babatunde fails to show that counsel was deficient for failing to file a motion for speedy trial or that he was denied effective assistance of counsel. As a result, he is not entitled to relief on this claim.

### f.   Failure to File a Motion for Severance

Babatunde contends that counsel was deficient for failing to file a motion for severance of the five counts lodged against him in the Indictment.[72] An indictment may charge a defendant in separate counts with two or more offenses if they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder." United States v. Huntsberry, 956 F.3d 270, 287 (5th Cir. 2020) (quoting United States v. Bullock, 71 F.3d 171, 174 (5th Cir. 1995) (citation omitted)).

The government notes that Babatunde was the only defendant in this case and argues that he fails to show that the offenses were improperly joined for purposes of Rule 8.[73] All five counts of the Indictment alleged that Babatunde used a false passport to open an account at a bank in Houston in a same or similar manner on five

---

[72]§ 2255 Motion, Docket Entry No. 73, p. 7; Memorandum in Support, Docket Entry No. 74, p. 7.

[73]United States' Motion, Docket Entry No. 108, p. 28.

different dates.[74]  Babatunde does not allege facts showing that his counsel had any basis for filing a motion for severance under these circumstances or that such a motion would have been granted if one had been filed.  Counsel is not ineffective for failing to make a frivolous objection.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . ."); see also United States v. Preston, 209 F.3d 783, 785 (5th Cir. 2000) (same).  Therefore, Babatunde is not entitled to relief on this claim.

g.   Failure to Provide Discovery

Babatunde contends that counsel was deficient for failing to furnish him with discovery of favorable evidence, citing Brady v. Maryland, 373 U.S. 83, 87 (1963).[75]  The record shows that counsel filed a pretrial motion for discovery, including Brady material.[76]  During the rearraignment proceeding Babatunde told the court that he had reviewed the charges and all the evidence that the government had against him with his defense counsel before he decided to plead guilty.[77]  Babatunde does not identify any piece

_____

[74]Indictment, Docket Entry No. 1, pp. 1-3.

[75]§ 2255 Motion, Docket Entry No. 73, p. 5.

[76]Request for Production of Evidence Favorable to Defendant, Docket Entry No. 16.

[77]Rearraignment Transcript, Docket Entry No. 71, p. 8.

of evidence that was wrongly withheld before he entered his guilty plea.  Absent a showing that counsel was deficient or that he was prejudiced as the result of his counsel's performance, Babatunde is not entitled to relief on this claim.

### h.    Failure to Investigate and Locate Witnesses

Babatunde contends that counsel was deficient for failing to investigate and locate witnesses.[78]  A defendant who alleges a failure to investigate on the part of his counsel "must allege <u>with specificity</u> what the investigation would have revealed and how it would have altered the outcome of the trial."  <u>United States v. Bernard,</u> 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted) (emphasis added).  As noted above, the record shows that defense counsel filed several pretrial motions, including motions for discovery.[79]  Babatunde has not specified what evidence his counsel failed to discover or how it would have made a difference in this case.

Likewise, Babatunde has not identified the witnesses he claims counsel should have located, the nature of each witness's testimony, or how the witness would have helped his case.  "Claims of uncalled witnesses are disfavored, especially if the claim is

---

[78]§ 2255 Motion, Docket Entry No. 73, pp. 7-8; Memorandum in Support, Docket Entry No. 74, p. 8.

[79]<u>See</u> Motion for Early Disclosure of Jencks Act and Rule 26.2 Material, Docket Entry No. 12; Request for Production of Evidence Favorable to Defendant, Docket Entry No. 16.

unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." <u>Gregory v. Thaler,</u> 601 F.3d 347, 352 (5th Cir. 2010) (citing <u>Harrison v. Quarterman,</u> 496 F.3d 419, 428 (5th Cir. 2007)); <u>see also Sayre v. Anderson,</u> 238 F.3d 631, 635-36 (5th Cir. 2001) (emphasizing that "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative") (citation omitted).  "To prevail on such a claim [of uncalled witnesses], 'the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.'" <u>United States v. Fields,</u> 761 F.3d 443, 461 (5th Cir. 2014) (quoting <u>Day v. Quarterman,</u> 566 F.3d 527, 538 (5th Cir. 2009)).

Babatunde has not provided any facts in support of his claim that counsel failed to locate witnesses who were available to testify on his behalf.  Likewise, Babatunde does not provide the substance of any witness's testimony or shown how that testimony would have changed the result of his proceeding.  His unsupported allegations are insufficient to demonstrate that he received ineffective assistance.  <u>See Fields,</u> 761 F.3d at 461; <u>see also Alexander v. McCotter,</u> 775 F.2d 595, 602 (5th Cir. 1985) (observing that the mere allegation that counsel failed to interview a potential witness, without showing that the witness would have

testified favorably, is insufficient to meet a defendant's burden to demonstrate prejudice). Accordingly, Babatunde is not entitled to relief on this claim.

### i. Failure to Prepare for Trial

Babatunde contends that counsel was deficient for failing to prepare for trial.[80] In support of this claim, Babatunde argues that he paid defense counsel a $25,000 retainer to represent him with an understanding that counsel would represent him "for the entire case from [the beginning] all the way to the conclusion of the criminal matter including trial."[81] Babatunde alleges further that counsel threatened to withdraw and refused to prepare for trial unless Babatunde paid additional fees in an attempt to "extort" more money.[82]

Although Babatunde ultimately pled guilty pursuant to a negotiated Plea Agreement, the record refutes Babatunde's claim that his counsel failed or refused to prepare for trial if one were necessary. Babatunde acknowledged during the rearraignment that his counsel had done everything that Babatunde had asked of him and that Babatunde was fully satisfied with his representation.[83] Babatunde also assured the court that his plea had not been coerced

---

[80]§ 2255 Motion, Docket Entry No. 73, p. 8; Memorandum in Support, Docket Entry No. 74, pp. 8-10.

[81]Memorandum in Support, Docket Entry No. 74, p. 9.

[82]Id.

[83]Rearraignment Transcript, Docket Entry No. 71, pp. 8-9.

in any way.[84]  Babatunde has offered no evidence in support of his allegation that counsel threatened to withdraw if Babatunde did not pay additional fees.  Babatunde's allegation that counsel failed to prepare a defense is also refuted by the record, which confirms that defense counsel engaged in trial preparation by filing several pretrial motions, including requests for discovery, designation of exhibits, and a motion in limine in anticipation of a trial.[85] Defense counsel filed a motion for a continuance of the trial, which was unopposed by the government, citing the need to effectively prepare a defense by reviewing documents that had not yet been provided by the government during the discovery process.[86]

Although Babatunde appears to claim that he would not have pled guilty if only his counsel had been prepared for trial, Babatunde does not specify what else his counsel could have done to raise a defense to the charges outlined in all five counts of the Indictment.[87]  Considering the totality of the evidence outlined in

---

[84]Id. at 19.

[85]See Motion for Early Disclosure of Jencks Act and Rule 26.2 Material, Docket Entry No. 12; Motion for Hearing to Determine Intelligibility of Tapes and Accuracy of Transcripts, Docket Entry No. 13; Motion for Rule 12(d) Designation, Docket Entry No. 14; Defendant's Motion [in Limine] to Prevent the Prosecution's Witnesses from Introducing Impermissible Characterizations of Hearsay Evidence and Its Source, Docket Entry No. 15; Request for Production of Evidence Favorable to Defendant, Docket Entry No. 16.

[86]Defendant's Unopposed Motion for Continuance, Docket Entry No. 21, pp. 1-5.

[87]Memorandum in Support, Docket Entry No. 74, pp. 9-10.

the PSR,[88] Babatunde does not establish a reasonable probability that he would have insisted on a trial, but for his counsel's failure to prepare in any specific way. <u>See Young v. Spinner,</u> 873 F.3d 282, 287 (5th Cir. 2017) (citing <u>United States v. Kayode,</u> 777 F.3d 719, 726-27 (5th Cir. 2014) (finding that the "overwhelming evidence" on the charged offenses and lack of a viable defense other than [the defendant's] own sworn testimony "weighs against a finding of prejudice"); <u>Armstead v. Scott,</u> 37 F.3d 202, 210 (5th Cir. 1994) (concluding [the defendant], "in light of the strong evidence against him" — including an eyewitness lineup identification and his fingerprints being found at the crime scene — had not shown "there is a reasonable probability that he would not have plead[ed] guilty")).   Babatunde's conclusory allegations are otherwise insufficient to establish either deficient performance or actual prejudice as a result.  <u>See Demik,</u> 489 F.3d at 646-47.  Therefore, he is not entitled to relief on this claim.

3.   <u>Babatunde Was Not Denied Effective Assistance of Counsel in Connection With His Sentencing.</u>

Babatunde contends that counsel was deficient after the plea was entered because he failed to prepare for or defend him during his sentencing proceeding by (a) requesting a "<u>Fatico</u> hearing"; (b) investigating or presenting mitigating evidence; (c) objecting to enhancements in the PSR; (d) arguing for a reduction based on

---

[88]PSR, Docket Entry No. 40, pp. 3-7.

provisions in the Sentencing Guidelines; and (e) obtaining a recommendation from the court against deportation.[89] Instead, Babatunde claims that his defense counsel "stood silent at sentencing" and made no "good faith effort" to defend him.[90]

To establish ineffective-assistance in connection with sentencing a defendant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. See United States v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004) (holding that "that any additional time in prison has constitutional significance") (emphasis in original); see also Glover v. United States, 121 S. Ct. 696, 700 (2001) (observing that "our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance"). Babatunde makes no such showing here for the reasons explained below.

a.   Failure to Request a Fatico Hearing

Babatunde contends that his counsel was deficient for failing to request a "Fatico hearing" in connection with his sentencing.[91] The government notes that Fatico hearings are based on precedent from the Second Circuit in United States v. Fatico, 579 F.2d 707

---

[89]Memorandum in Support, Docket Entry No. 74, pp. 17-21.

[90]Id. at 20.

[91]Memorandum in Support, Docket Entry No. 74, p. 20.

(2d Cir. 1978), which pre-dates the Sentencing Guidelines.[92]   In
Fatico the Second Circuit addressed the use of hearsay information
from unidentified informants and the requirement of corroborating
evidence from the government unless the defendant does not dispute
the truth of the statements sought to be introduced at sentencing.
See Fatico, 579 F.2d at 712-13; see also United States v. Borello,
766 F.2d 46, 60 n.23 (2d Cir. 1985) (describing a Fatico hearing as
a proceeding "which is used to determine whether under due process
the sentencing judge can properly rely on statements made by the
Government — typically in the presentence report — to the effect
that the defendant is a member or associate of organized crime").

    Babatunde does not take issue with any particular statement in
the PSR or its subsequent amendments, and he does not allege that
he was sentenced based on misinformation.  He does not otherwise
show that a hearing was required or that his counsel was deficient
for failing to invoke Fatico in connection with his sentencing.
See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990)
("Counsel is not deficient for, and prejudice does not issue from,
failure to raise a legally meritless claim."); Lavernia v. Lynaugh,
845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for
failing to pursue meritless motions.") (citations omitted).  Absent
a showing that counsel had, but failed to make, a meritorious
objection or motion, Babatunde does not demonstrate that he

---

[92]Government's Motion, Docket Entry No. 108, p. 37.

received ineffective assistance and he is not entitled to relief on this claim.

### b.  Failure to Present Mitigating Evidence

Babatunde contends that his counsel was deficient for failing to investigate and present mitigating evidence.[93]  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 104 S. Ct. at 2066.  This includes a duty to investigate mitigating evidence for purposes of sentencing.  See Wiggins v. Smith, 123 S. Ct. 2527, 2544 (2003) (concluding that in a death penalty case the petitioner was prejudiced by counsel's failure to investigate and present "available mitigating evidence" that, "taken as a whole, 'might well have influenced the jury's appraisal' of [his] moral culpability"); Rompilla v. Beard, 125 S. Ct. 2456, 2460 (2005) ("[E]ven when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the sentencing phase of trial.").

The record refutes Babatunde's claim that counsel stood silently by during the sentencing hearing and refused to defend him or raise arguments in mitigation of his punishment.  As noted

---

[93]Memorandum in Support, Docket Entry No. 74, pp. 17-18.

above, the PSR prepared by the Probation Office recommended a range of 30-37 months' imprisonment under the Sentencing Guidelines after determining that Babatunde had a total offense level score of 19 and zero criminal history points.[94]   Defense counsel raised objections to the loss amount, which the court addressed by adopting the PSR as amended by the Third Addendum.[95]   After the government argued for a sentence at the high end of the range recommended in the PSR, defense counsel raised several arguments in mitigation — including Babatunde's lack of a criminal record, his expressions of remorse, his record of pursuing higher education, his efforts to support his family as the primary breadwinner, and his volunteer work in the community by working with the homeless.[96] The court found that the government made a good argument, but agreed with defense counsel and sentenced Babatunde at the lowest end of the recommended range to 30 months' imprisonment based on the fact that it was Babatunde's first offense and he accepted responsibility by pleading guilty.[97]

Babatunde does not allege facts showing that any other evidence was available that could have been used in mitigation

---

[94]PSR, Docket Entry No. 40, p. 14.

[95]Sentencing Transcript, Docket Entry No. 67, pp. 3-5 (adopting the PSR, Docket Entry No. 40, as amended by the Third Addendum to the Presentence Report, Docket Entry No. 50).

[96]Id. at 6-8.

[97]Id. at 8.

during his sentencing proceeding if counsel had engaged in additional investigation. Defense counsel cannot be deficient for failing to investigate "where no reasonable lead was available." Blanton v. Quarterman, 543 F.3d 230, 239 (5th Cir. 2008) (citing Wiggins, 123 S. Ct. at 2538). Absent a showing that counsel failed to uncover mitigating evidence that would have resulted in a different outcome at sentencing, Babatunde fails to demonstrate that his counsel's performance was deficient or that he was prejudiced as a result. Therefore, he is not entitled to relief on this issue.

### c.   Failure to Object to Enhancements

Babatunde contends that his counsel was deficient for failing to object to enhancements in the PSR.[98]   This claim is easily resolved. As noted above, defense counsel filed objections to the PSR regarding the amount of loss attributable to Babatunde based on the amount of money deposited by victims into the fraudulent bank accounts that he opened.[99]   The PSR was amended as a result of counsel's objections.[100]   Babatunde does not identify any other objection his counsel could have raised to the calculation of his

---

[98]Memorandum in Support, Docket Entry No. 74, p. 19.

[99]Sentencing Transcript, Docket Entry No. 67, pp. 3-4; Government's Response to Defendant's Objections to PSR, Docket Entry No. 48.

[100]Third Addendum to Presentence Report, Docket Entry No. 50, p. 1.

sentence in the PSR.   His conclusory allegations are insufficient to establish deficient performance or actual prejudice.   <u>See Demik,</u> 489 F.3d at 646-47.   Accordingly, Babatunde is not entitled to relief on this claim.

### d.   Failure to Argue for a Reduced Sentence

Babatunde contends that his counsel was deficient for failing to invoke provisions found in the Sentencing Guidelines that afford a trial court with discretion to reduce a sentence.[101]  The Probation Officer who prepared the PSR did not identify "any factors concerning the offense or the offender that would warrant departure from the guideline range" or "any additional factors concerning the offense or the offender under 18 U.S.C. § 3553(a) which would warrant a sentence outside the advisory guideline system."[102] Babatunde does not reference any provision in the guidelines that would apply to him or which would have resulted in a downward variance if counsel had requested it.   His bare allegation of ineffective assistance, unsupported by any authority showing that his counsel had a valid argument to make, is insufficient to establish deficient performance or actual prejudice.   <u>See Demik,</u> 489 F.3d at 646-47.   Accordingly, Babatunde is not entitled to relief on this claim.

---

[101]Memorandum in Support, Docket Entry No. 74, p. 19.

[102]PSR, Docket Entry No. 40, p. 17.

-44-

e.   Failure   to   Request   a   Judicial   Recommendation
Against Deportation

Babatunde contends that his counsel was deficient for failing
to request a judicial recommendation against deportation from the
court during the sentencing proceeding.[103]   The Fifth Circuit has
held in the past that a defendant may prevail on such a claim if he
can demonstrate a reasonable probability that, had it been made, a
request for a judicial recommendation against deportation might
have succeeded.  See United States v. Castro, 26 F.3d 557, 562 (5th
Cir. 1994).  Babatunde cannot make that showing here because the
statutory   provision   that   previously   authorized   a   judicial
recommendation against deportation, 8 U.S.C. § 1251(b), was
repealed in 1990.  See Padilla, 130 S. Ct. at 1480 (observing that
"the JRAD procedure is no longer part of our law" because Congress
eliminated   it   in   1990);   see also Gharbi v. United States,
Nos. A-09-CA-712-LY/A-04-CR-180-LY-12, 2010 WL 11545315, at *8
(W.D. Tex. May 18, 2010) (rejecting an ineffective-assistance claim
for   failure   to   request   a   judicial   recommendation   against
deportation on the grounds that one is no longer available) (citing
the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978,
5050 (1990)).

Because  it  would  have  been  futile  to  request  a  judicial
recommendation against deportation, Babatunde cannot show that
counsel was deficient for failing to request one.  See Murray v.

---

[103]Memorandum in Support, Docket Entry No. 74, p. 21.

Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions."). Absent a showing that he was denied effective assistance of counsel at his sentencing, Babatunde is not entitled to relief on this claim.

### 4.   Babatunde Was Not Denied Effective Assistance of Counsel in Connection with His Appeal.

In his final claim Babatunde contends that his trial counsel was deficient for abandoning him after he filed a notice of appeal.[104]  The record reflects that defense counsel filed a pro se notice of appeal on Babatunde's behalf after sentence was imposed.[105]  At Babatunde's request the Fifth Circuit found that he was financially unable to retain counsel and appointed a different attorney to represent him for purposes of an appeal.[106]

The government notes that Babatunde does not provide evidence showing that his trial counsel was retained for purposes of an appeal.[107]  Babatunde does not otherwise show that trial counsel breached an agreement to represent him on appeal or that he was harmed as a result.  In that regard, after new counsel was appointed to represent him and official transcripts were prepared

---

[104]Memorandum in Support, Docket Entry No. 74, pp. 22-23.

[105]Decision Regarding My Appeal, Docket Entry No. 56, p. 1.

[106]Letter from the Clerk's Office for the United States Court of Appeals, Fifth Circuit, Docket Entry No. 62, pp. 1-2; Order granting Babatunde's motion for appointment of counsel, Docket Entry No. 62, p. 3.

[107]Government's Motion, Docket Entry No. 108, pp. 39-40.

for his appeal, Babatunde filed a motion to withdraw his notice of appeal so that he could pursue claims on "habeas" review in a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.[108]   The Fifth Circuit granted Babatunde's request and dismissed his appeal.[109]

Based on this record Babatunde's claim that he was abandoned and left without counsel to pursue an appeal is without merit. Babatunde does not otherwise show that his counsel failed to raise any particular non-frivolous issue or that, if he had done so, there was a reasonable probability that Babatunde would have prevailed on appeal.   See Smith v. Robbins, 120 S. Ct. 746, 764 (2000).   Accordingly, Babatunde fails to establish that he was denied effective assistance of counsel in connection with his appeal.   Because Babatunde has not established a valid claim for relief, his § 2255 Motion (Docket Entry No. 73) will be denied.

5.   Babatunde's Remaining Motions

Babatunde has filed several other motions in this case, which seek release pending review of his § 2255, relief in his favor, and expedited consideration.[110]   To the extent they relate to his § 2255

_____

[108]Letter Request to Withdraw Appeal, Docket Entry No. 91; see also Defendant Withdrawal of Appeal in Furtherance of His [28] U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence Imposed on Him, Docket Entry No. 94.

[109]Order, Docket Entry No. 93 (dismissing United States v. Babatunde, No. 19-20551 (5th Cir. Jan. 7, 2020)).

[110]See Babatunde's Motion for Reconsideration (Docket Entry No. 112); Application for Modification/Release (Docket Entry (continued...)

Motion, these motions will be denied because the court has determined that he is not entitled to relief.

The court will briefly address two of Babatunde's remaining motions, starting with his Motion to Compel.[111]   The court previously denied a motion filed by Babatunde under Rule 41(g) seeking return of property seized during his arrest because Babatunde had not named a trusted person or authorized recipient for the property while he was in prison.[112]   Babatunde has filed a renewed motion for return of property pursuant to Rule 41(g), which identifies a person who is willing to receive his items of property.[113]   In response to that motion, the government has submitted an affidavit and a receipt, confirming that the items were hand-delivered to the person identified by Babatunde on December 23, 2020.[114]   Because the items have been returned, Babatunde's Motion to Compel Return of Property Pursuant to Fed. R. Crim. P. 41(g) will be denied as moot.

Babatunde has also filed a motion to dismiss his Indictment because of "pre-indictment delay" as well as speedy trial

---

[110](...continued)
No. 113); Motion for Expedited Consideration of His § 2255 Motion (Docket Entry No. 114); Motion for Judgment (Docket Entry No. 121); and Motion for Discharge/Release (Docket Entry No. 122).

[111]Motion to Compel, Docket Entry No. 120.

[112]Memorandum Opinion and Order, Docket Entry No. 105, pp. 6-8.

[113]Motion to Compel, Docket Entry No. 120, p. 5.

[114]Affidavit of U.S. Postal Inspector Kyle Shadowens and Receipt, Exhibits to Government's Response to Defendant's Motion for Return of Property, Docket Entry No. 125-1.

violations.[115]   Babatunde   contends   further   that   dismissal   is
appropriate because the evidence was insufficient to sustain his
conviction.[116]   Babatunde provides no authority showing that a
motion to dismiss is appropriate at this late date.  Moreover, the
motion must be denied for reasons alluded to previously.  In that
respect, Babatunde admitted using a false passport in violation of
the law when he pled guilty in this case and cannot now argue that
the evidence was insufficient.   See Boykin v. Alabama, 89 S. Ct.
1709, 1711-12 (1969) ("A plea of guilty is more than a confession
which admits that the accused did various acts; it is itself a
conviction; nothing remains but to give judgment and determine
punishment."); United States v. Broce, 109 S. Ct. 757, 762 (1989)
("A plea of guilty and the ensuing conviction comprehend all of the
factual and legal elements necessary to sustain a binding, final
judgment of guilt and a lawful sentence.").   Likewise, Babatunde
waived any challenge to pre-indictment delay or the denial of a
speedy trial when he entered his voluntary and knowing guilty plea.
See Medel-Guadalupe, 967 F.3d at 428; see also United States v.
Bell, 966 F.2d 914, 915 (5th Cir. 1992) ("In the Fifth Circuit, a
speedy trial violation is a non-jurisdictional defect waived by a

---

[115]Motion   to   Dismiss   Indictments,   Docket   Entry   No.   109,
pp. 3-6; Declaration in Support of Defendant's Motion to Dismiss
Indictments in the Interest of Justice, Docket Entry No. 110,
pp. 2-3.

[116]Motion to Dismiss Indictments, Docket Entry No. 109, pp. 6-7.

guilty plea.") (citing <u>United States v. Broussard,</u> 645 F.2d 504, 505 (5th Cir. 1981) ("The entry of a knowing and voluntary guilty plea waives all non-jurisdictional defects in the proceeding.  This disposes of the speedy trial claim.")).  Babatunde fails to otherwise show that his Indictment was defective or that he is entitled to relief for any reason.  Therefore, his motion to dismiss the Indictment will be denied.

### IV.  <u>Certificate of Appealability</u>

Rule 11 of the Rules Governing Section 2255 Proceedings states that a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability will not issue unless the applicant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Tennard v. Dretke,</u> 124 S. Ct. 2562, 2565 (2004) (quoting <u>Slack v. McDaniel,</u> 120 S. Ct. 1595, 1604 (2000)).  This requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Buck v. Davis,</u> 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because Defendant does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will be denied.

## V.   Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. The United States' Answer to Babajide Tolulope Babatunde's Motion Under 28 U.S.C. § 2255, Motion to Dismiss, Motion for Summary Judgment (Docket Entry No. 108) is **GRANTED**.

2. Babatunde's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Docket Entry No. 73) is **DENIED**; and this action will be dismissed with prejudice.

3. All other motions filed by Babatunde, including his Motion to Dismiss Indictments in the Interest of Justice (Docket Entry No. 109); Response to United States' Answer to Babajide Tolulope Babatunde's Motion Under 28 U.S.C. § 2255 [and] Cross-Motion for Summary Judgment (Docket Entry No. 111); Motion for Reconsideration of Release from Custody and Incorporated Statements of Law and Facts Pending the Final Determination on the Merits of His Section '2255' Petition (Docket Entry No. 112); Application for Modification of Detention Order — Release on Recognizance (Docket Entry No. 113); Request for Expedited Consideration [of his § 2255 Motion] (Docket Entry No. 114); Motion to Compel Return of Property Pursuant to Fed. R. Crim. P. 41(g) (Docket Entry No. 120); Motion for Judgment in Favor of Babajide Tolulope Babatunde (Docket Entry No. 121); and Motion for Discharge and Immediate Release from Custody to Correct

Manifest Injustice (Docket Entry No. 122) are **DENIED**.

4.    A certificate of appealability is **DENIED**.

**The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.**

**SIGNED** at Houston, Texas, on this the 25th day of March, 2021.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-52-